1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

DORIS ELIZABETH MORAN,

                 Petitioner,

    v.

PAMELA BONDI, et al.,

                 Respondents.

CASE NO. C25-2755JLR

ORDER

15

## I.   INTRODUCTION

16

    Before the court is *in forma pauperis* Petitioner Doris Elizabeth Moran's Petition

17

for Writ of Habeas Corpus under 28 U.S.C. § 2241 and request for injunctive relief. (Pet.

18

(Dkt. # 5); Reply (Dkt. # 12).) Respondents United States Attorney General Pamela

19

Bondi, United States Department of Homeland Security ("DHS") Secretary Kristi Noem,

20

United States Immigration and Customs Enforcement ("ICE"), and Acting Director of the

21

Seattle Field Office of United States Citizenship and Immigration Services ("USCIS")

22

Laura Hermosillo (together, "Respondents") oppose the petition. (Resp. (Dkt. # 9).) The

1   court has considered the petition, the parties' submissions, the relevant portions of the

2   record, and the applicable law. Being fully advised, the court GRANTS Ms. Moran's

3   petition.

## II.    BACKGROUND

5       Ms. Moran is a citizen of El Salvador presently detained at the Northwest ICE

6   Processing Center ("NWIPC") in Tacoma, Washington. (Pet. at 5.) She is subject to a

7   final order of removal and was originally ordered removed on June 16, 2025. (Bloom

8   Decl. (Dkt. # 10) ¶¶ 5, 10; *see also* Pet. (Dkt. # 5-1) (Final Order of Removal).) An

9   immigration judge granted her Deferral Under the Convention Against Torture

10  ("DCAT") pursuant to 8 C.F.R. § 1208.17, thereby barring her removal to El Salvador.

11  (*See* Bloom Decl. ¶ 5; *see also* Final Order of Removal at 1.) Nevertheless, she remains

12  in custody. (Pet. at 4.)

13      Ms. Moran was born in El Salvador and represents that she has resided in the

14  United States continuously since 2017. (Pet. at 6.) She was arrested by ICE agents on

15  August 6, 2024, outside her residence located near Rohnert Park, California, following

16  alleged reports identifying her as a member of the Barrio 18 street gang. (*See* Lambert

17  Decl., Ex. B (Record of Inadmissible Alien at 4-5 (describing the circumstances

18  surrounding her arrest); *see also* Pet. at 6 (denying this affiliation and alleging that ICE

19  never provided her with evidence of such reports).) Later that same day, DHS (1) issued

20  Ms. Moran a Notice to Appear charging her with a violation of Section 212(a)(6)(A)(i) of

21  the Immigration and Nationality Act ("INA") for being a noncitizen in the United States

22  without being admitted or paroled and (2) booked her into the NWIPC. (*See* Bloom

Decl. ¶ 4; *see also* Lambert Decl., Ex. A (Notice to Appear).)  She has no criminal history in the United States.  (*See* Record of Inadmissible Alien at 3.)

During removal proceedings ICE charged Ms. Moran as removable to El Salvador, and Ms. Moran applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  (Pet. at 6-7.)  Ms. Moran represents that she is a victim of child sex trafficking in El Salvador and was forced into prostitution by members of the Barrio 18 street gang, some members of which physically and sexually assaulted her during a period of incarceration in El Salvador.  (*Id*. at 7 (describing her history with the Barrio 18 street gang).)  On June 16, 2025, an immigration judge ordered Ms. Moran removed to El Salvador but granted DCAT.  (Bloom Decl. ¶ 5; Final Order of Removal at 4.)

On June 17, 2025, ICE requested Ms. Moran's assistance in identifying a third country for her removal and Ms. Moran declined to provide assistance.  (Bloom Decl. ¶ 6.)  On June 18, 2025, ICE submitted requests for third-country removal for Ms. Moran to Belgium, Bolivia, and Kazakhstan, but those requests were denied.  (*Id*. ¶ 7.)  On June 20, 2025, Ms. Moran, through her counsel, stated that, if offered, she would accept removal to Canada, Spain, and Switzerland.  (*Id*. ¶ 8.)  ICE submitted requests to those countries for Ms. Moran's removal and those requests, too, were denied.  (*Id*.)  On June 26, 2025, ICE served Ms. Moran with written notice of its intent to remove her to Mexico and Ms. Moran expressed fear of removal to Mexico; a few days later, ICE referred Ms. Moran to USCIS regarding her claim of fear to Mexico, but USCIS did not initiate a credible fear review at that time.  (*Id*. ¶ 9; *see also* Pet. at 7 (describing her fear of Barrio

1    18 gang activity in Mexico).)  On July 3, 2025, ICE sent requests for third country

2    removal for Ms. Moran to Belize, France, Guyana, Papua New Guinea, Portugal, and

3    Qatar, but those requests were also denied.  (*Id*. ¶ 11.)

4          On October 1, 2025, ICE conducted a Post Order Custody Review with Ms.

5    Moran and notified her of its intent to continue to detain her.  (*Id*. ¶ 12.)  On December

6    10, 2025, (1) ICE served Ms. Moran with notice of third country removal to Mexico;

7    (2) Ms. Moran again expressed fear of removal to Mexico; and (3) ICE again notified

8    USCIS of her fear of removal to Mexico.  (*Id*. ¶ 13; *see also* Lambert Decl., Ex. E

9    (Notice of Removal).)  Respondents represent that although USCIS agreed to conduct a

10    reasonable fear screening on January 13, 2026, as of January 20, 2026, USCIS has not

11    done so.  (Bloom Decl. ¶ 14.)

12          On January 5, 2026, Ms. Moran filed the present petition for writ of habeas corpus

13    pursuant to 28 U.S.C. § 2241.  She argues that her detention violates the Administrative

14    Procedure Act; the INA, 8 U.S.C. § 1231(a), and its implementing regulations; the CAT;

15    the Fifth Amendment's Due Process Clause; and the Eighth Amendment.  (*See* Pet.)  Ms.

16    Moran's petition is now fully briefed and ripe for the court's review.

17                **III.    ANALYSIS**

18          The court first considers the legal standard for detention of noncitizens during

19    immigration proceedings and then turns to the parties' arguments concerning the present

20    immigration habeas petition.

21    //

22    //

**A.    The Legal Standard for Detention of a Noncitizen During Immigration Proceedings.**

The INA permits detention of noncitizens present in the United States during immigration proceedings.  8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a).  A noncitizen who is ordered removed must be removed by DHS within 90 days, *id*. § 1231, and, during the removal period, the noncitizen must be detained, *id*. § 1231(a)(2).  When the government fails to remove the noncitizen during that period, the statute only permits further detention of the noncitizen under certain conditions: (1) the noncitizen is "inadmissible" under certain grounds; (2) the noncitizen is "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy; or (3) the noncitizen has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal[.]"  *Id*. § 1231(a)(6); *see Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

Although ICE is permitted to hold noncitizens in detention beyond the initial 90-day window subject to certain limitations, the INA does not permit indefinite detention.  *Zadvydas*, 533 U.S. at 689 (affirming that the INA limits the "post-removal-period detention to a period reasonably necessary to bring about [the noncitizen's] removal from the United States").  Furthermore, ICE may extend a noncitizen's detention only until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id*. at 701.  The Supreme Court has held that a six-month period of detention is presumptively reasonable.  *Id*.  After six months of detention, a noncitizen seeking release from detention bears the burden of showing that "there is no

1  significant likelihood of removal in the reasonably foreseeable future." *Id*.  The burden

2  then shifts to the government to present "evidence sufficient to rebut that showing." *Id*.

3  If the government is unable to meet its burden, then the noncitizen must be released from

4  detention.  *Jennings v. Rodriguez*, 583 U.S. 281, 298-99 (2018).

5  **B.    DHS's Continued Detention of Ms. Moran is Unlawful.**

6          Ms. Moran argues, in pertinent part, that her detention is unlawful because there is

7  no significant likelihood of her removal in the reasonable future and, as such, her

8  continued detention violates the Supreme Court's holding in *Zadvydas*.  (Pet. 16-17.)

9  Respondents counter that Ms. Moran is lawfully detained pursuant to 8 U.S.C. § 1231.

10  (Resp. at 1.)  The court agrees with Ms. Moran.

11          DHS's continued detention of Ms. Moran does not comply with the Supreme

12  Court's holding in *Zadvydas* and thus constitutes a violation of Ms. Moran's due process

13  rights.  Ms. Moran was ordered removed on June 16, 2025, (Bloom Decl. ¶ 5; *see also*

14  Final Order of Removal), and has remained in ICE custody since then (*see generally*

15  Lambert Decl., Ex. F (Decision to Continue Detention)).  Thus, because Ms. Moran has

16  been detained for more than six months since the entry of her final order of removal, her

17  *Zadvydas* grace period ended on January 16, 2025.  *See* 533 U.S. at 701.  Consequently,

18  the burden shifts to Respondents to show that Ms. Moran is likely to be removed in the

19  foreseeable future.  *Id*.

20          The court concludes that Respondents have failed to meet their burden.

21  Respondents contend that Ms. Moran's continued detention is not "indefinite" because

22  she "is still eligible for removal to countries other than El Salvador[.]"  (Resp. at 2, 9; *see*

1    Bloom Decl. ¶¶ 9, 13).  They do not, however, present evidence that rebuts Ms. Moran's

2    initial showing that her removal to either El Salvador or a third country is not reasonably

3    foreseeable.  (*See generally* Resp.)

4        First, it is undisputed that Ms. Moran was ordered removed but remains subject to

5    the DCAT, which, at present, bars her removal to El Salvador.  (Pet. at 7; Bloom Decl.

6    ¶ 5; Final Order of Removal at 1).)  Thus, Respondents cannot show that Ms. Moran is

7    likely to be removed to El Salvador in the foreseeable future.

8        Second, during the more than seven months that ICE has detained Ms. Moran, it

9    has not identified a third country to which she can be removed.  (*See generally* Resp.)

10   Respondents state that between June 2025 and July 2025 DHS sent third country removal

11   requests to several countries, including three countries for which Ms. Moran consented to

12   removal; all these countries, however, denied these requests.  (Bloom Decl. ¶¶ 7-8, 11

13   (identifying twelve countries for which ICE was unable to obtain permission for Ms.

14   Moran's removal).)  Respondents further state that twice ICE served Ms. Moran with

15   notice of intent to remove her to Mexico and twice she expressed fear of removal to

16   Mexico.  (*See id*. ¶¶ 9, 13.)  According to Respondents, although Ms. Moran initially

17   expressed fear of removal to Mexico on June 26, 2025, USCIS did not agree to conduct a

18   credible fear interview until January 13, 2026, and, as of the date Respondents filed their

19   response, USCIS still had not conducted such an interview.  (*Id*. ¶¶ 9, 14.)  Because DHS

20   has not identified a third country to which it may remove Ms. Moran, Respondents fail to

21   show that Ms. Moran is likely to be removed to a third country in the foreseeable future.

22   ICE may not hold Ms. Moran indefinitely while it delays assessment of the credibility of

1    her fear of removal to Mexico and searches for a third country to which it may effectuate

2    her removal. *Zadvydas*, 533 U.S. at 689. Thus, the court concludes that DHS's

3    continued detention of Ms. Moran violates her due process rights.

4    **C.      Membership in the D.V.D. Class does not Preclude Ms. Moran from
              Asserting her Third-Country Removal Claims.**

5
6            Respondents argue that the court "should decline to exercise jurisdiction over [Ms.

7    Moran's] third country removal claim as a matter of comity" because she is a member of

8    the certified plaintiff class in *D.V.D v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D.

9    Mass. 2025). (Resp. at 12-13.) Here, however, "dismissal [of Ms. Moran's petition]

10   would be inappropriate because [Ms. Moran] seek[s] relief [that she] is unable or unlikely

11   to obtain in the *D.V.D.* litigation." *Sanchez v. Bondi*, No. C25-2573KKE, 2026 WL

12   160882, *4 (W.D. Wash. Jan. 21, 2026). Furthermore, Ms. Moran's due process claim is

13   "not identical to the claims in the *D.V.D.* class action because [s]he seeks a meaningful

14   opportunity to seek withholding of removal in the event [that] [s]he fears persecution in a

15   designated third country—a claim not at issue in *D.V.D.*" *Id.* (citing *Nguyen v. Scott*, 796

16   F. Supp. 3d 703, 729 (W.D. Wash. 2025) (compiling cases)). Finally, for the reasons

17   thoroughly discussed in *Nguyen v. Scott*, the court rejects Respondents' contention that

18   Ms. Moran's petition should be dismissed because "the Supreme Court's stay of the

19   preliminary injunction [in *D.V.D.*] is both precedent and the result is binding" on Ms.

20   Moran as a member of the *D.V.D.* class. (Resp. at 12 (so contending); *see Nguyen*, 796 F.

21   Supp. 3d at 730-33 (concluding that where, as here, the Supreme Court offers no clarity

22   or detail about why it granted the stay, lower courts "cannot ascertain from the Supreme

1    Court's emergency order whether it found the government likely to succeed on its

2    jurisdictional or substantive claims" and, thus, the order is not treated as precedential);

3    *see also Sanchez*, 2026 WL 160882 at *5 (compiling cases rejecting the contention that a

4    petitioner's *D.V.D.* class membership bars her petition for habeas corpus).)  Thus, the

5    court concludes that Ms. Moran's membership in the *D.V.D.* class does not prevent the

6    court from adjudicating her claims for individual relief in this habeas action.

7    **D.    The Court Grants in Part Ms. Moran's Requests for Injunctive Relief.**

8          Ms. Moran seeks two forms of prospective injunctive relief: (1) an injunction

9    prohibiting Respondents from removing or seeking to remove her to a third country

10   without notice and meaningful opportunity to respond in compliance with the statute and

11   due process in reopened removal proceedings; and (2) an injunction prohibiting

12   Respondents from removing Ms. Moran to any third country.  (*See* Pet. at 21.)  The court

13   address each request in turn.

14         As an initial matter, the court may provide injunctive relief if Ms. Moran meets the

15   standard for a permanent injunction.  (*See id*. at 3-4); *See eBay Inc. v. MercExchange,*

16   *L.L.C.,* 547 U.S. 388, 391 (2006) (providing the standard for permanent injunctive relief).

17   "According to well-established principles of equity, a [petitioner] seeking a permanent

18   injunction must satisfy a four-factor test before a court may grant such relief."  (*Id*.)  Ms.

19   Moran must demonstrate: (1) that she has suffered an irreparable injury; (2) that remedies

20   available at law, such as monetary damages, are inadequate to compensate for that injury;

21   (3) that, considering the balance of hardships between her and Respondents, a remedy in

22   equity is warranted; and (4) that the public interest would not be disserved by a

ORDER - 9

1    permanent injunction.  (*See id.*) (citations omitted).  "Once a [constitutional] right and a

2    violation have been shown, the scope of a district court's equitable powers to remedy past

3    wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v.*

4    *Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty.*

5    *of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever

6    powers are necessary to remedy constitutional violations because they are charged with

7    protecting these rights.") (citations omitted).

8        1.  The Court Grants Ms. Moran's Request for Notice and an Opportunity to
             Respond Prior to Attempted Removal to a Third Country.

9

10       Ms. Moran first asserts that she has a constitutional right to notice and a

11    meaningful opportunity to respond to any efforts by Respondents to remove her to a third

12    country.  (Pet. at 18-19.)  Respondents, in response, (1) summarize the July 2025 memo

13    setting forth DHS's most recent policy for removal of noncitizens to third countries and

14    (2) contend that "DHS policy already provides the process [Ms. Moran] requests."  (*See*

15    Resp. at 7-8, 11-12 (providing that, per current policy, DHS notified Ms. Moran of her

16    intended third country removal to Mexico and afforded her the opportunity to express

17    fear of removal to that country and that DHS policy "does not require that proceedings be

18    reopened automatically").)  Removal of a noncitizen to a third country is permitted under

19    certain circumstances, including instances when the government cannot remove a

20    noncitizen to the country specified in the removal order.  *See Sanchez*, 2026 WL 160882

21    at *6.  The government, however, is required to "comply both with the INA, 8 U.S.C.

22    § 1231(b) and the Due Process Clause" before effectuating a third-country removal.  *Id.*

1 │ (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019)); *see also Kumar*

2 │ *v. Wamsley*, No. C25-2055KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025)

3 │ (stating that "third country removals are subject to the same mandatory protections that

4 │ exist in removal proceedings"). "To comply with due process, the Government must

5 │ provide sufficient notice and a meaningful opportunity for the noncitizen to present any

6 │ claim of fear of persecution or harm upon removal to a designated third country."

7 │ *Sanchez*, 2026 WL 160882 at *6. Removal is expressly forbidden where a noncitizen's

8 │ "life or freedom would be threatened . . . because of [their] race, religion, nationality,

9 │ membership in a particular social group, or political opinion." *Id.* (quoting 8 U.S.C.

10 │ § 1231(b)(3)(A)) (internal quotation marks omitted). If a noncitizen expresses fear of

11 │ removal to a designated third country, he or she is entitled to pursue withholding of

12 │ removal through reopened removal proceedings before an immigration judge. *Id.*

13 │ (compiling cases in this District so concluding). Additionally, courts in this District have

14 │ consistently ruled that Respondents' third-country removal policy does not comport with

15 │ due process and have ordered permanent injunctions of the nature Ms. Moran seeks here.

16 │ *See Sanchez*, 2026 WL 160882 at * 5 (compiling in-district cases so concluding). Thus,

17 │ because Ms. Moran's liberty and removal to a third country are at issue and she has

18 │ shown a constitutional right and a violation, the court concludes that permanent

19 │ injunctive relief is warranted. Therefore, as Respondents have already undertaken efforts

20 │ to remove Ms. Moran to a third country, they must provide her notice and a meaningful

21 │ opportunity in reopened removal proceedings to contest that removal for fear of

22 │ persecution or torture in that country.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

    2.  <u>Ms. Moran's Request for an Injunction Prohibiting her Removal to any Third Country is Denied Without Prejudice.</u>

Second, Ms. Moran argues that Respondents' efforts to remove her to a third country constitute a punitive third-country banishment that violates the Fifth and Eighth Amendments and seeks an order prohibiting her removal to any third country on that basis. (*See* Pet. at 19-20.) Respondents contend that the court should reject Ms. Moran's request to enjoin her removal to any third country because she "does not allege which third country she fears removal to because of its punitive nature, what harm she personally faces, or any circumstances that would make removal punitive in her case" and, as such, her allegations are "purely conjectural and nonjusticiable." (Resp. at 14.) The court agrees with Respondents that, on this record, Ms. Moran has not demonstrated a likelihood of irreparable injury that would entitle her to permanent injunctive relief in the form of an order prohibiting Respondents from removing her to "any third country." *See Sanchez*, 2026 WL 160882 at *6 (citation omitted)); *see id*. (so concluding where petitioner "provide[d] no facts specific to his circumstances that support[ed] enjoining Respondents from removing him to 'any third country,' such as identifying a target third country where he might suffer persecution or torture"). Therefore, the court declines to grant Ms. Moran a permanent injunction against removal to "any third country."

## IV.   CONCLUSION

For the reasons set forth above, the court GRANTS Ms. Moran's petition (Dkt. # 5) and ORDERS as follows:

(1) Finding that Ms. Moran is entitled to immediate release from custody, the court ORDERS that a Writ shall issue. The court DIRECTS Ms. Moran to file as soon as possible a proposed Writ of Habeas Corpus and to email a Word version to robartorders@wawd.uscourts.gov.

(2) If Respondents take steps to remove Ms. Moran to a country other than El Salvador, they must provide Ms. Moran with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

(3) Within **FORTY-EIGHT (48)** hours of this Order, Respondents must provide the court with a declaration confirming that DHS has released Ms. Moran from custody.

Dated this __3rd__ day of February, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 13